## Peabody *v.* Tucker, as Secretary of the Commonwealth.

Argued February 25, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., and ROGERS.

610

*Henry T. Reath,* with him *Duane, Morris & Heck-scher.* Of counsel, *Irving R. M. Panzer* and *Gerald S. Segal,* for plaintiff.

*Lawrence T. Hoyle, Jr.,* with him *Edward J. Wein-traub* and *Thomas J. Oravetz,* Deputy Attorneys General, and *J. Shane Creamer,* Attorney General, for defendant.

MEMORANDUM OPINION AND ORDER PER CURIAM, February 29, 1972:

Endicott Peabody, a registered voter of the State of Massachusetts and a person possessing the constitutionally prescribed qualifications to be Vice President of the United States, desires to have his name placed upon the official ballot of the Democratic Party as a candidate for that office at the primary to be held in this State on April 25, 1972. To that end he has caused to be prepared and tendered to the defendant, C. Delores Tucker, Secretary of the Commonwealth, nomination petitions meeting all the formal requirements of the Pennsylvania Election Code, Act of June 3, 1937, P. L. 1333, Art. I, §101, 25 P.S. §2601, together with a filing fee. The defendant refused to accept the petitions and filing fee on the ground that the law of Pennsylvania fails to provide for acceptance of nomination petitions for the office of Vice President of the United States. Thereupon Mr. Peabody brought this suit in mandamus seeking a writ directing the defendant to

accept the plaintiff's petitions and filing fee and to certify his name on the primary ballot.

We have conducted a hearing. The facts hereinbefore recited were admitted into evidence and the parties have agreed that our order should be the final judgment of this court on the merits.

As Americans are early taught, persons aspiring to be President and Vice President of the United States are not nominated for those offices by vote of the members of their political parties but by delegates to National Conventions of their parties, chosen in accordance with the rules of their parties. In former times the parties chose their candidates for all offices pursuant to party rules and the general electorate chose as public officers persons offered by political parties. The primary election was a latter day device provided by statute with the purpose of democratizing the choice of public officers by diminishing the power of the political party in caucus and enlarging the rights of the party electorate. Its success has been such that it deservedly keeps company with such other miracles of governmental invention as *Marbury v. Madison*[1] and the 16th Amendment to the Constitution of our country. Inevitably, candidates for our only National offices, the Presidency and Vice Presidency, will one day be chosen by party members at primary elections. We are not there yet.

However, the Pennsylvania Legislature has provided for the expression by members of political parties of their preference for a person to be the candidate of their respective parties for the office of President. Mr. Peabody contends that we may and should construe the statutes of Pennsylvania as similarly authorizing a Vice Presidential preferential primary. We are unable to do so.

---

[1] 1 Cranch 137, 2 Law. Ed. 60 (1803).

The statutory provisions to which the plaintiff directs our attention are all contained in the Pennsylvania Election Code, *supra.* They are:

Section 903, 25 P.S. §2863, which imposes upon the defendant ". . . the duty . . . prior to each primary, to ascertain the various National and State offices to be filled at the ensuing November election, and for which candidates are to be nominated at such primary. . . ." The plaintiff states that the Vice Presidency is a National office to be filled in November 1972 and indeed it is. But the section goes on to say "and for which candidates are to be nominated at such primary." Neither the Presidency nor the Vice Presidency are offices for which candidates are nominated at the primary. As plaintiff must and does concede, they are nominated by National convention. Indeed the mechanics of such nomination are specifically provided by Section 918 of the Code, 25 P.S. §2878, empowering the person nominated by the National convention of his party for the office of President to nominate presidential electors by certification to the Secretary of the Commonwealth.

Section 907, 25 P.S. §2867, provides that the "names of candidates for nomination as President of the United States, and the names of all other candidates for party nominations, and for election as delegates, alternate delegates, members of committees and other party officers, shall be printed upon the official primary ballots. . . ." The plaintiff contends that since the Vice Presidency is a party nomination and he is a candidate, the defendant is bound to print his name on the ballot. The plaintiff's argument from this section would be stronger if the President were not specifically mentioned, for in such case it and the Vice President could arguably be included among "other candidates for party nominations." The specific mention of the President impels us to conclude that the phrase "other

candidates for party nominations" has the same meaning as "for which candidates are to be nominated at such primary" employed in Section 903, 25 P.S. §2863. Again, the President specifically included in and the Vice President excluded from Section 907 are not to be nominated at the primary but by convention.

In our view, Section 902, 25 P.S. §2862, conclusively determines this matter against the plaintiff's position: "All candidates of political parties, as defined in section 801 of this act, for the offices of United States Senator, Representative in Congress and for all other elective public offices within this State, except that of presidential electors, shall be nominated, and party delegates and alternate delegates, committeemen and officers who, under the provisions of Article VIII of this act or under the party rules, are required to be elected by the party electors, shall be elected at primaries provided in this act. In the years when candidates for the office of President of the United States are to be nominated, every registered and enrolled member of a political party shall have the opportunity at the Spring primary in such years to vote his preference for one person to be the candidate of his political party for President." The Legislature has thus provided for a preferential primary for the Presidency. If it had desired to do so the Legislature might have provided for a Vice Presidential preference primary by the inclusion of three words. We have no power to insert them.

The omission from Sections 912 and 913, 25 P.S. §§2872 and 2873, prescribing the details of petitions, filing fees, and procedures for filing specifically referring to the office of President and containing no mention of the office of Vice President fortifies our belief that the Legislature has not afforded party electors the right to express their preference for a person to hold the office to which the plaintiff aspires. We therefore make the following:

ORDER

AND NOW, this 29th day of February 1972, final judgment in the within matter is entered in favor of the defendant and against the plaintiff.

———

DISSENTING OPINION BY JUDGE WILKINSON :

I must respectfully dissent. Certainly the question of whether the names of candidates seeking nomination for the office of Vice President of the United States should be printed on the official ballot of their Party is not free from doubt. There is nothing in the Pennsylvania Election Code, Act of June 3, 1937, P. L. 1333, Art. I, Section 101, 25 P.S. 2601 *et seq.*, that either specifically authorizes or specifically prohibits it. Under such circumstances, I would require a clearer showing of legislative intent to prohibit accepting nomination petitions for the office of Vice President than I can find in the Election Code, before I would prevent the voters of Pennsylvania from voting a preference for a person to be the candidate of his political party for that high office.

Section 903, 25 P.S. §2863, provides for the Secretary of the Commonwealth to ascertain the various National and State offices to be filled at the ensuing November election, "and for which candidates are to be nominated at such primary, *and otherwise,* in accordance with the provision of this Act." I really believe it is clear to me that the office of Vice President is to be filled at this fall's election and a candidate is to be nominated in the primary *or otherwise,* i.e., by party convention. In strict legal contemplation, as well as historic concept, the logic of the majority would force me to conclude that neither the office of President nor of Vice President is filled in the November election, but rather by the electoral college.

Section 907, 25 P.S. §2867, certainly includes the Vice Presidency when it plainly states: "The names of candidates for nomination as President of the United States, *and the names of all other candidates for party nominations, . . .*" (Emphasis supplied) Indeed to me, far from indicating a legislative intent to here exclude the Vice Presidency, it seems, by failing to mention it here, it shows a legislative intent to include it within the term "President" or "all other."

The only Section that causes me to pause is Section 902, 25 P.S. §2862, when it specifically provides: "In the years when candidates for the office of President of the United States are to be nominated, every registered and enrolled member of a political party shall have the opportunity at the Spring primary in such years to vote his preference for one person to be the candidate of his political party for President." When Sections 903 and 907 are as clear as they seem to me to be, I would implement them by interpreting "President" to include Vice President. Indeed, in a very real practical sense, the candidate for Vice President should be considered a candidate "for the Presidency," for he is the one the people are electing in the fall to fill the office of President in the event of the death or disability of the President. Surely, none of us would compare any of the other duties or functions of the office of the Vice Presidency with that of being "at the ready" to fill the Presidency—sometimes referred to as "one heart beat away."

I have little difficulty in interpreting Sections 912 and 913, 25 P.S. §§2872 and 2873, as applying the same terms of petitions, filing fees and procedures to the office of Vice President as applies to the President and with which plaintiff has complied.

During and following World War II, there were many occasions for high officials of our country to dis-

616

cuss our representative form of government with high Soviet officials. When our officials would refer to our leaders being selected by the voters, the reply was "Not so." The Soviet officials asserted that voters of America do not elect their leaders; they merely vote for one of two men who are selected for them.[1] By our decision in this case, which denies the Pennsylvania voters the right to even indicate a preference for a candidate seeking the party nomination for the office of Vice President of the United States, we lend credence to these superficial, unsound observations.

The defendant argues that we should not disrupt the election calendar at this late date to require the modification of the proposed ballot as previously advertised. The small disruption of listing plaintiff's name on the ballot of the Democratic Party is far outweighed by the giant step forward in the democratic process that would be made by this landmark decision.

---

[1] See W. *Averell Harriman, "Peace with Russia,"* Simon-Schuster (1959) at pages 16 and 17.